| | | |
|---|---|---|
| TRUE FITNESS TECHNOLOGY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CV1930 HEA |
| | ) | |
| SAMSARA FITNESS, LLC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant, | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction. [Doc. No. 12]. Plaintiff has filed a Response in opposition to the Motion. [Doc. No. 17]. Defendant has filed a Reply [Doc. No. 18], Plaintiff has filed a Sur-Reply [Doc. No. 21], and Defendant has filed a Sur-Sur Reply [Doc. No. 24]. For the reasons set forth below, Defendant's Motion is granted.

### Facts and Background[1]

Plaintiff True Fitness Technology, Inc. ("Plaintiff") brings this action against Defendant Samsara Fitness LLC ("Defendant") under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, alleging trademark infringement and unfair competition. Plaintiff also alleges a violation of Missouri trademark law.

Plaintiff, a Missouri corporation with its principal place of business in Missouri, manufactures, sells, and services high quality exercise equipment, including treadmills. Since 1983, Plaintiff has used the trademark, TRUE®, to brand its products, and the mark has been

---

[1] The recitation of facts is taken from Plaintiff's Complaint and are taken as true for the purposes of this motion. Such recitation in no way relieves any party from the necessary proof thereof in later proceedings.

federally registered with the United States Patent and Trademark Office for use with treadmills since 1987 and for use with exercise equipment generally since 2005.

Defendant, a limited liability corporation organized under the laws of Connecticut with its principal place of business in Connecticut, operates an e-commerce site under the domain name http://www.samsarafitness.com. On the website, Defendant advertises and offers treadmills for sale using the mark "TRUE," including a model named the TrueForm Runner. Defendant is not an authorized dealer of True Fitness treadmills, nor a licensee of Plaintiff's trademarks. Plaintiff alleges that "Defendant, through its website and communications with potential customers, is using Plaintiff's TRUE Marks in connection with the sale, offering for sale, distribution, and advertising of treadmills." [Doc. No. 1 at ¶ 15].

Plaintiff alleges that "[t]his Court has personal jurisdiction over Defendant because Defendant sold the infringing product in this district, Defendant conducts business in the State of Missouri through its e-commerce site, http://www.samsarafitness.com, and has engaged in acts or omissions within this District causing injury within this District, or has otherwise made or established contacts with this District sufficient to permit the exercise of personal jurisdiction over Defendant." [*Id.* at ¶ 4].

## Legal Standard

A defendant may move to dismiss a case under Rule 12(b)(2) of the Federal Rules for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).

A plaintiff alleging personal jurisdiction "'must state sufficient facts in the complaint to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 474 (8th Cir. 2012) (alteration in original) (quoting *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010)). "If the defendant controverts or denies jurisdiction, the plaintiff bears the

burden of proving facts supporting personal jurisdiction." *Wells Dairy*, 607 F.3d at 518. Personal jurisdiction "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id.* (internal quotation marks omitted).

Although the Court may consider affidavits and other matters outside of the pleadings on a Rule 12(b)(2) motion, the pleader's burden, in the absence of an evidentiary hearing, is only to make a "minimal" prima facie showing of personal jurisdiction, and the Court "must view the evidence in the light most favorable to the [pleader] and resolve all factual conflicts in its favor in deciding whether the [pleader] has made the requisite showing." *K-V Pharm. Co. v. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011). Notwithstanding that facts are viewed in the light most favorable to the pleader, "'[t]he party seeking to establish the court's *in personam* jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592 (8th Cir. 2011) (quoting *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003)).

The perspective in our Circuit is one where courts should to "approach [the] analysis of personal jurisdiction on two levels, first examining whether the exercise of jurisdiction is proper under the forum state's long-arm statute[,] [and] [i]f the activities of the non-resident defendant satisfy the statute's requirements, [to] then address whether the exercise of jurisdiction comports with due process." *Dakota Indus. v. Dakota Sportswear*, 946 F.2d 1384, 1391 (8th Cir. 1991).

"Due process requires that a defendant have certain 'minimum contacts' with the forum state for personal jurisdiction to be exercised." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012) (citing *Int'l Shoe Co. v. Washington.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). More specifically,

> Contacts with the forum state must be sufficient that requiring a party to defend an action would not "offend traditional notions of fair play and substantial justice." [*Int'l Shoe Co.*, 326 U.S.] at 316, 66 S. Ct. 154, 90 L. Ed. 95 (internal quotation marks and citation omitted). "The 'substantial connection' between the

defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L.Ed.2d 92 (1987) (internal citations omitted).

*Myers*, 689 F.3d at 911. The Supreme Court has observed:

> Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location of litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980).

There are two methods in which the Due Process Clause may be satisfied such that minimum contacts between the defendant and the forum state are established: the first is through general jurisdiction, and the second is through specific jurisdiction. General jurisdiction refers to the power of a court to hear a lawsuit against a defendant who has "continuous and systematic" contacts with the forum state, regardless of where the cause of action actually arose. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984). Here, Defendant concedes that the Court cannot maintain general personal jurisdiction over it, and alleges only specific personal jurisdiction. [*See* Doc. No. 17 at 4 n.3].

"Specific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum state, the cause of action, and the defendant." *Myers*, 689 F.3d at 912 (citing *Helicopteros*, 466 U.S. at 414). The Eighth Circuit has established a five-factor test to determine whether a defendant's contacts with the forum state are sufficient to establish personal jurisdiction over the defendant. These factors, from *Land–O–Nod v. Bassett Furniture Industries, Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983), are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the

convenience of the parties. "[The court] must look at all of the factors in the aggregate and examine the totality of the circumstances in making a personal jurisdiction determination." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (citation omitted).

In addition to the five *Land–O–Nod* factors, the Court must consider whether Defendant's alleged intentional acts were performed "for the very purpose of having their consequences felt in the forum state." *Dakota Indus.*, 946 F.2d at 1390–91. This is known as the "effects test," which was first employed by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* effects test requires Plaintiff to make three prima facie showings in order for Defendant's alleged trademark infringement to serve as a source of personal jurisdiction. Plaintiff must show that Defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at Missouri, and (3) caused harm, the brunt of which was suffered—and which Defendant knew was likely to be suffered—in Missouri. *Johnson*, 614 F.3d at 796 (internal quotation omitted). Rather than superseding the *Land-O-Nod* five-part test for personal jurisdiction, the *Calder* effects test merely "requires the consideration of additional factors when an intentional tort is alleged." *Dakota Indus.*, 946 F.2d at 1391; *see also Johnson*, 614 F.3d at 796–97.

The Eighth Circuit has clarified that it does not adhere to a "proximate cause standard" for the required connection between the defendant's contacts with the forum and the plaintiff's cause of action. *See id.* Rather, specific jurisdiction is warranted when the defendant purposely directs its activities at the forum state and the litigation "result[s] from injuries . . . relating to [the defendant's] activities [in the forum state.]" *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008). Courts consider "the totality of the circumstances in deciding whether personal jurisdiction exists." *K-V Pharm. Co.*, 648 F.3d at 592–93.

**Discussion**

Defendant contends that this Court lacks personal jurisdiction over it and should therefore grant its Motion to Dismiss Plaintiff's claims. For the reasons discussed below, the Court agrees, will grant Defendant's Motion, and dismiss this action.

The Court frames its due process inquiry within the Eighth Circuit's admonition that "[s]pecific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.'" *Johnson*, 614 F.3d at 795 (quoting *Steinbuch*, 518 F.3d at 586 (citing *Burger King Corp.*, 471 U.S. at 472).

1.        **The Nature and Quality of the Contacts with Missouri**

The first *Land–O–Nod* factor concerns the nature and quality of Defendant's contacts with Missouri. It is undisputed that the Defendant never maintained businesses, properties, offices, employees in Missouri, and is not now, nor ever has been, registered to do business in Missouri.

Although Plaintiff alleges in its Complaint that "Defendant sold the infringing product in this district," [Doc. No. 1 at ¶ 4], Defendant denies selling infringing products in this district or any other in Missouri, or shipping any infringing products to Missouri.[2] Although Plaintiff repeatedly states in its Response that Defendant made sales in Missouri, personal jurisdiction is evaluated "not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto," with Plaintiff bearing the burden. *Wells Dairy*, 607 F.3d at 518. Plaintiff has failed to carry its burden as to Defendant's sales in Missouri.

---

[2] Defendant acknowledges that it sold one Samsara Fitness TrueForm Runner treadmill in Missouri to Jennifer Gustafson, counsel for Plaintiff. [Doc. No. 13 at 3]. Plaintiff makes no direct reference to this single sale, and its weight on the personal jurisdiction analysis is negligible. *See Foreign Candy Co., Inc. v. Tropical Paradise, Inc.*, 950 F. Supp. 2d 1017, 1032–33 n.5 (N.D. Iowa 2013) (collecting cases).

Plaintiff also contends that, because Defendant's products were offered for sale on its website, which is accessible in Missouri, Defendant has sufficient contacts with the state for this Court to exercise personal jurisdiction. Defendant counters that its website should be considered "passive" because the products cannot be purchased directly from the website, but rather must be purchased through www.paypal.com—an independent third party website. Further, Defendant argues that merely offering a product for sale on a website that can be accessed in any state does not confer nationwide personal jurisdiction over Defendant.

The *Zippo* test is instructive in evaluating the sufficiency of internet contacts under a specific jurisdiction analysis. *See Johnson*, 614 F.3d at 796 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). In *Zippo*, the court created a "sliding scale" to evaluate websites for conferring personal jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

952 F. Supp. at 1124 (internal citations and quotation marks omitted).

It is entirely unconvincing that Defendant's website is "passive" merely because consumers purchase products from its website by making payments to an independent third party. The fact that Defendant sells products to consumers through its website inherently makes the site interactive, not passive. It is irrelevant by what method consumers proffer, and Defendant ultimately receives, payment.

In considering where Defendant's website, and its role in this case, falls on the interactive section of the *Zippo* spectrum, the Court notes well the Eight Circuit's explanation that "under *Zippo*, whether specific personal jurisdiction could be conferred on the basis of an interactive website depends not just on the nature of the website but also on evidence that individuals in the forum state accessed the website in doing business with the defendant." *Johnson*, 614 F.3d at 797 (citing *id.* at 1125–26). In this regard, "although [http://www.samsarafitness.com] may be characterized as interactive, there is no evidence in the record that [Defendant] engaged in any transaction or exchange of information with a Missouri resident via [http://www.samsarafitness.com], or that a Missouri resident ever accessed the website." *Id.* Accordingly, [the Court] decline[s] to confer personal jurisdiction based on only the possibility that a Missouri resident had contact with [Defendant] through [http://www.samsarafitness.com]." *Id.*

The Court therefore finds that, due to the nature and quality of the contacts between the parties, Defendant could not have reasonably anticipated being haled into court in Missouri, and thus, the first *Land–O–Nod* factor weighs in favor of Defendant.

### 2. The Quantity of Contacts

Because Plaintiff failed to sufficiently allege the nature and quality of the contacts between Defendant and Missouri to confer specific jurisdiction, the numerosity of such contacts is immaterial to the Court's analysis. Further, as noted, the record only reflects one Defendant sale in Missouri. That sale was to Plaintiff's counsel. The second *Land–O–Nod* factor thus weighs in favor of Defendant.

### 3. The Relationship of the Cause of Action to the Contacts

The third *Land–O–Nod* factor focuses on Defendant's contacts with Missouri as it relates to the particular cause or causes of action asserted. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22

F.3d 816, 819 (8th Cir. 1994). "The third factor distinguishes between specific and general [personal] jurisdiction." *Myers*, 689 F.3d at 911. This is so, because "[s]pecific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum, the cause of action, and the defendant." *Id.* at 912. The *Calder* effects test may be utilized in analyzing the third factor where, as here, the plaintiff alleges tortious conduct. *N.C.C. Motorsports, Inc. v. K-VA-T Food Stores, Inc.*, 975 F. Supp. 2d 993, 1003 (E.D. Mo. 2013) (citing *Johnson*, 614 F.3d at 794–96).

The *Calder* Court found that the defendants were subject to California's personal jurisdiction because the defendants' acts were intentional, the allegedly libelous article they wrote was centered on the life and career of a longstanding California resident, "and the brunt of the harm, in terms both of Plaintiff's emotional distress and the injury to her professional reputation, was suffered in California." 465 U.S. at 789. Because the defendants' acts were "expressly aimed at California," and they knew that "injury would be felt by Plaintiff in the State in which she lives and works and in which the National Enquirer has its largest circulation," the defendants were assumed to have reasonably anticipated being haled into court in the forum state. *Id.* at 789–90.

Following *Calder*, cases decided throughout this Circuit uniformly have held that in order for a defendant's tortious conduct to confer personal jurisdiction, there must be a prima facie showing that the defendant's intentional acts were "performed for the very purpose of having their consequences felt in the forum state." *Dakota Indus.*, 946 F.2d at 1391 (internal citation omitted). *See, e.g.*, *Johnson*, 614 F.3d at 796 (no personal jurisdiction where defendant's allegedly defamatory comments were not expressly aimed at forum, and no other evidence of minimum contacts existed); *Gen. Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1387 (8th Cir. 1993) (no personal jurisdiction where "focal point" of tortious injury occurred in outside

forum, even though the court agreed that effects of harm ultimately were felt in forum); *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (no personal jurisdiction where defendant had knowledge that plaintiff would be affected by intentional tort, but otherwise had no other connection with forum); *N.C.C. Motorsports*, 975 F. Supp. 2d 993 (no personal jurisdiction where non-resident defendant entered into a lease with Missouri plaintiff to use plaintiff's copyrighted shopping cart vehicle for promotional purposes, knowingly hired third party to build an infringing shopping cart, and then terminated lease when shopping cart was ready); *Express Scripts, Inc. v. Care Continuum Alliance, Inc.*, 2011 U.S. Dist. LEXIS 61157, 2011 WL 2199967, *4 (E.D. Mo. June 7, 2011) (no personal jurisdiction where defendant did not knowingly target trademark infringement at forum, and defendant had no other contacts with forum).

Even a close examination of *Calder* reveals that the Supreme Court's finding of personal jurisdiction in that case depended on something more than the defendants' knowledge that the plaintiff would feel the brunt of the injury in her state of residence. 465 U.S. at 784–87. Other contacts between the defendants and the forum state were found in *Calder*, including the fact that the defendants made frequent trips to the forum for business, made direct phone calls to residents of the forum in furtherance of the tort, and published the defamatory article about the plaintiff in the forum, a state where the defendants' publication had its highest circulation. *Id.* All of these facts combined evidenced the *Calder* defendants' purposeful availment of the forum and justified the court's exertion of personal jurisdiction over them.

*Johnson* is particularly instructive to the facts of this case. Plaintiff repeatedly invokes the argument that the effect of Defendant's alleged trademark infringement was felt in Missouri by virtue of the fact that Plaintiff is the holder of the mark and a Missouri citizen. However, the *Johnson* court applied *Calder* to such an argument and rejected it. 614 F.3d at 797–98. The court

explained that "even if the effect of [the alleged tort] was felt in Missouri, [the Eighth Circuit] use[s] the *Calder* test merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Id.* at 796–97. Following this logic, the *Johnson* court "construed the *Calder* effects test narrowly, and h[e]ld that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Id.* at 797.

Here, as noted, Defendants not only has too few additional contacts with Missouri to confer personal jurisdiction on the basis of the *Calder* effects tests, it has *no* additional contacts with Missouri. *Cf. N.C.C. Motorsports*, 975 F. Supp. 2d 993 (holding that *Calder* effects test did not confer personal jurisdiction in copyright infringement case where defendant had previously entered into a lease with Missouri plaintiff to use plaintiff's copyright).[3]

Based on the application of the *Calder* effects test, the third *Land–O–Nod* factor weighs in favor of Defendant.

### 4.    Missouri's Interest in Providing a Forum for its Residents and the Convenience of the Parties

Before the Court considers the final two *Land–O–Nod* factors, it is important to recognize that they cannot outweigh the first three factors. *See Land–O–Nod*, 708 F.2d at 1340 ("For instance, the last two factors are said to be of secondary importance and not determinative.") Defendant concedes that the interest of Missouri in litigating this matter weighs in favor of Plaintiff. Defendant argues, and the Court agrees, that the fifth factor—the convenience of the

---

[3] Plaintiff relies on several trademark infringement cases in which courts found personal jurisdiction and, as one factor, noted the import of the trademark holder's state of residence. However, these cases are distinguishable because of the defendants in them had additional contacts with the forum state. *See Dakota Indus. v. Dakota Sportswear*, 946 F.2d 1384 (8th Cir. 1991) (additional contacts included shipping infringing products to forum state and sales of infringing products in forum state; *Calder* factor two more clearly established because there was evidence that defendant directed the infringing activity toward the forum state in that it had received phone calls as well as a cease and desist letter from plaintiff); *Reliant Care Grp., LLC v. Reliant Mgmt. Grp., LLC*, 2014 WL 6607167 (E.D. Mo. Nov. 19, 2014) (additional contacts included the defendant's website listing employment positions in Missouri and an online application for a recruiter whose territory included Missouri; *Calder* factor two more clearly established because defendant and plaintiff exchanged letters regarding use of the mark); *Anheuser-Busch v. City Merchandise*, 176 F. Supp. 2d 951 (E.D. Mo. 2001) (additional contacts such as defendant sending 200 infringing products directly to Missouri, including some which were shipped following plaintiff sending a cease and desist letter and defendant representing that all infringing products had been destroyed).

parties—is neutral. These factors do little to influence the personal jurisdiction analysis in this case, and the Court notes that Missouri's "interest in providing its residents with a forum cannot make up for the absence of minimum contacts." *Digi-Tel Holdings v. Proteq Telcoms.*, 89 F.3d 519, 525 (8th Cir. 1996).

### 5.        Due Process Conclusion

For the reasons explained, the Court finds that Plaintiff failed to allege the minimum contacts with Missouri necessary to comport with the Due Process Clause as it relates to Plaintiff's claims against Defendant. Although the personal jurisdiction analysis incorporates both a due process inquiry and a long-arm statute inquiry, given that the Missouri long-arm statute authorizes personal jurisdiction to the extent permissible under the Due Process Clause, a finding that a plaintiff has *failed* to establish that personal jurisdiction comports with the Due Process Clause is dispositive in Missouri cases, thus obviating the necessity of a long-arm inquiry. *See Eagle Tech., Inc. v. Expander Ams., Inc.*, 783 F.3d 1131, 1136 (8th Cir. 2015) ("Because 'the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause, we turn immediately to the question whether the assertion of personal jurisdiction would violate the due process clause.'") (quoting *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004)); *see also Viasystems*, 646 F.3d at 594 ("We need not decide whether these actions by St. Georgen suffice to place it within the bounds of Missouri's long-arm statute, because it is clear that the cited activities are not sufficient to surmount the due-process threshold.").[4] Accordingly, based on the Court's due process analysis, it finds that it does not have personal jurisdiction over Defendant arising from

---

[4] By contrast, a court's finding that it *does* have personal jurisdiction over a non-resident defendant requires analysis of *both* the long-arm statute and the Due Process Clause. *See Myers*, 689 F.3d at 909–910 (citing *Bryant v. Smith Interior Design Group, Inc.*, 310 S.W.3d 227, 231 (Mo. banc 2010)).

its alleged acts in infringing Plaintiff's trademarks by using them in Defendant's products sold online.

<strong>Conclusion</strong>

Based on the foregoing, the Court grants Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, and dismisses this action.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. No. 12] is **GRANTED**.

A  Judgment consistent with this Opinion will issue forthwith.

Dated this 18th  day of June, 2015.

_____
  HENRY EDWARD AUTREY
  UNITED STATES DISTRICT JUDGE